IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.     No. CR 04-02362 JB

JAMES PHILLIP SANDOVAL

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Certain Supplemental Jury Selection Procedures, filed December 7, 2005 (Doc. 85); and (ii) the Defendant's Motion for Supplemental Jury Questionnaire, filed December 7, 2005 (Doc. 86). The primary issues are whether the Court should allow a supplemental jury selection procedure and supplemental jury questionnaire because this case involves allegations of a parent's sexual assault against his four-year old daughter. Because the Court concludes that good cause exists for most of the requested order, the Court will grant the motions in part, but will not include proposed Question 20 in the supplemental questionnaire, will add another question to replace question 20 to detect any prejudice, and will conduct its individual questioning of jurors in groups of seven.

## PROCEDURAL BACKGROUND

The Superceding Indictment charges Sandoval with seven counts of aggravated sexual abuse of his four-year old daughter, Jane Doe. Sandoval's attorney conferred with the United States' counsel, Assistant United States Attorney Samuel L. Winder, and the United States opposes the motions. See Defendant's Motion for Certain Supplemental Jury Selection Procedures at 4;

Defendant's Motion for Supplemental Jury Questionnaire at 3. Trial is set to begin on March 20, 2006.

Sandoval requests that the Court use certain procedures as it conducts the jury selection process to assist prospective jurors to speak freely about their attitudes: (I) submit a proposed supplemental jury questionnaire to the prospective jurors; (ii) convene the entire jury panel to eliminate those prospective jurors to whom there are obvious and unassailable challenges for cause because of disability, insurmountable scheduling conflicts, knowledge of counsel and/or the parties, and other such challenges for cause; (iii) conduct individual voir dire -- by the Court and by the parties -- on the most sensitive issues, e.g., the sexual abuse of children; (iv) conduct group voir dire of less sensitive issues with groups of eight prospective jurors at a time; and (v) allow the parties to exercise challenges for cause at any time during the jury selection process. See Defendant's Motion for Certain Supplemental Jury Selection Procedures ¶¶ 1-5, at 1-2. Question 20 of Sandoval's proposed supplemental questionnaire states:

> 20. You may hear evidence that Mr. Sandoval actively participates in the spiritual ceremonies and rituals of the traditional Native religion of San Felipe Pueblo.
>
> Do you consider yourself to be a religious person?
>
> Yes _____ No _____
>
> If you answered Yes,
>
> Do you follow the beliefs and practices of a particular religion?
>
> Yes _____ No _____
>
> Which religion?_____
>
> Yes _____ No _____

Do you belong to a particular church?

Yes _____    No _____

Which church? _____

Please describe the attitude or opinion of your religion or church to traditional Native American religions:

_____

Please describe your attitude or opinion to traditional Native American religions:

_____

## LAW REGARDING JURY SELECTION

To be meaningful, the adequacy of voir dire examination must allow the defendant an opportunity to make reasonably intelligent use of his peremptory challenges and challenges for cause. See United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977). "[V]*oir dire* is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (1983)(citations omitted). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination.")(citation omitted). "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980)(citations omitted)

## ANALYSIS

The United States is generally opposed to the use of jury questionnaires. See United States'

Response to Defendant's Motion for Supplemental Jury Questionnaire Filed December 7, 2005 ("Response to Motion for Supplemental Jury Questionnaire") ¶ 1, at 1, filed December 15, 2005 (Doc. 88). The United States contends that the parties and the Court can use the voir dire process to facilitate the selection of a fair and impartial jury. See id. The United States asserts, upon information and belief, that the District has not used the individual voir dire process that Sandoval advances in cases of this nature. See United States' Response to Defendant's Motion for Certain Supplemental Jury Selection Procedures Filed on December 7, 2005 ¶ 2, at 1, filed December 15, 2005 (Doc. 89). The United States maintains that there are hundreds of other cases, with sensitive matters, that it has prosecuted in the District where the individual voir dire process has not been conducted. See id.

The United States asks that, if the Court grants Sandoval's Motion for Supplemental Jury Questionnaire, the United States requests the Court to conduct voir dire in the normal process. See id. ¶ 3, at 1-2. The United States agrees that Questions 1-19 and 21 of Sandoval's Jury Questionnaire are proper questions for purposes of voir dire. See Response to Motion for Supplemental Jury Questionnaire ¶ 2, at 1. The United States specifically states that these questions may help obtain a fair and impartial jury. See id.

The United States contends, however, that if the Court grants Sandoval's motion for the supplemental jury questionnaire, the Court should not include Question 20 in the Supplemental Jury Questionnaire. See id. ¶ 3, at 1-2. The United States maintains that Question 20 has no relevance to the allegations that the United States brings against Sandoval. See id. The United States specifically contends that whether a person has beliefs and practices in Native American, Jewish, Christian, Muslim, or any other religious system would not assist in the selection of a fair and

impartial jury based upon the allegations in this case. See id. Moreover, the United States asserts, based upon Mr. Winder's experience as a federal prosecutor, that questions of religion have never been asked to potential jurors in the voir dire process. See id. For the most part, good grounds exist for the orders that Sandoval requests in his motions. The case involves many issues of a highly sensitive nature. Those issues require delicate examination and discussion to facilitate the selection of a fair and impartial jury.

The allegation that a father committed incestuous sexual acts against his four-year old daughter is likely to provoke intense feelings among prospective jurors. These feelings may overwhelm the ability of some, if not many, prospective jurors to approach the case dispassionately, or to the view the evidence with fairness and impartiality.

Furthermore, sexual abuse is, generally, a very sensitive and difficult topic for most people to discuss. Sexual abuse of young children is even more difficult to contemplate and to discuss. And a parent's sexual abuse of a young child may be among the most difficult topics conceivable. It is especially difficult for most people to talk about sexual abuse in public, particularly among and in front of strangers. Jurors are more comfortable talking about sensitive and important issues individually or in small groups.

The Court will make every reasonable effort to create the most private and comfortable environment possible to enable prospective jurors to speak freely about their attitudes towards sexual abuse. The proposed questionnaire will aid the Court and the parties in obtaining and receiving information that will be helpful for the exercise of early challenges for cause so that prospective jurors do not have to be subjected unnecessarily to questioning in Court in voir dire. The questionnaire will allow the prospective jurors the opportunity to retain some measure of privacy on the sensitive issues

that arise in this case, such as sexual abuse, incest, gambling, and religious differences.

The questionnaire will aid judicial economy by allowing the Court and the parties to use the often limited time available for voir dire to address more substantive matters. The questionnaire will also allow the prospective jurors to provide some information about necessary but more mundane lines of inquiry outside the courtroom, thereby relieving the Court of the need to convene to conduct questioning about such mundane matters. By addressing these mundane matters in the questionnaire, the Court will be able to use the time available for in person voir dire more efficiently. The questionnaire will aid the Court and the parties in more effectively determining the existence and substance of challenges for cause, and in exercising those challenges, as well as assisting the parties in determining and exercising peremptory challenges.

The Court will deal with the issue of sexual abuse of children with each prospective juror individually to prevent contamination of other prospective jurors with factual matter that is relevant and pertinent to jury selection, but extraneous and potentially prejudicial to the parties and to the interests of justice in selecting a fair and impartial jury. The use of the questionnaire and the other suggested procedures will help to protect Sandoval's rights to a fair and impartial jury, and to a jury, as the United States Constitution guarantees, chosen from a representative cross-section of the community.

The use of these additional procedures will also help the Court in addressing any challenges brought under Batson v. Kentucky, 476 U.S. 79 (1986), for the inappropriate use of peremptory challenges. See Powers v. Ohio, 499 U.S. 400, 429 (1991)(holding that defendant may raise a challenge to the use of peremptory challenges even if the defendant is not member of the group that the peremptory challenges exclude).

The use of the questionnaire and these additional procedures will help Sandoval with the opportunity to exercise his peremptory challenges meaningfully. The proposed procedures will meet the parties' and the Court's needs, while also respecting the prospective jurors' sensibilities and privacy concerns. The procedures will offer relatively efficient ways of protecting the parties' rights to obtain and receive information for the meaningful exercise of challenges for cause and peremptory challenges, and will assist the Court by providing information to guide it in making informed decisions on matters of law.

To facilitate the use of the courtroom and the jury box, the Court will conduct the individual voir dire in groups of seven. The Court will seat the jurors in groups of seven in the en mass voir dire, and when the Court excuses the entire group, the Court will seat the smaller groups on the front row of the jury box. The Court will then bring individual jurors to the bench for individual questioning by the Court and by the parties.

As to Question 20, the Court will not include questions that ask jurors to specifically identify whether they follow a certain religion, and what that religion is, as well as their specific attitudes towards other religions, including Native American religions. See United States v. Greer, 968 F.2d 433, 438 (5th Cir. 1992)("Where, as here, the court has inquired adequately into the jurors' possible biases, that is, in a manner reasonably calculated to identify any bias, the failure to require that the prospective jurors of a particular religion identify themselves does not constitute an abuse of discretion nor render the trial constitutionally suspect.").

The United States has always gone to great lengths to protect the right of its citizens to practice their religion without interference from the government. While the First Amendment of the United States Constitution is the most obvious example of how important religious freedom is to our

nation, there are other examples. Even before the First Amendment, Article VI of the Constitution provided, and still does, that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." The Court is reluctant to summon citizens to a federal court and start questioning them about their religious views, even if it is for the important purpose of impaneling a fair and impartial jury for the particular defendant.

Moreover, if the Court were to permit the requested questioning, the Court would be concerned about what it would do with the solicited information. To start striking jurors because of their religious beliefs begins to require some religious qualifications to serve on federal juries. The Court should be careful not to sit or exclude jurors because of their religious beliefs or because of where they attend worship, and the information that Sandoval seeks to solicit would probably make that task more difficult rather than assist the task before the Court and the parties.

Congress and the courts have been particularly sensitive to not introduce religious views unnecessarily into cases. Rule 610 of the Federal Rules of Evidence prohibits a party to attack the credibility of a witness because of his religious views or lack thereof: "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." If witnesses cannot be so challenged, the Court should be cautious about permitting the parties to question prospective jurors along similar lines.

On the other hand, a defendant should be able, while remaining sensitive to undue intrusion into a prospective juror's religious beliefs, views, and practices, to inquire whether a juror has any view, religious or otherwise, that would preclude him from being a fair and impartial juror in this case. If there is someone that is prejudiced for or against someone of a particular faith, the defendant

should be able to detect that attitude. Thus, the Court will not use proposed Question 20 in its questionnaire, but will replace it with the following question:

20. You may hear evidence that Mr. Sandoval actively participates in the spiritual ceremonies and rituals of the traditional Native religion of San Felipe Pueblo. Do you have any idea, notion, belief, attitude, or opinion, based on religion, background, ideology, or otherwise, that would prevent you from being fair and impartial in a case involving a defendant who practices Native American religions?

Yes _____ No _____

If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as the Court will give it to you in its instructions, disregarding any other ideas, notions, or beliefs that you may have?

Yes _____ No _____

Does any reason or problem suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the Court's instructions to you on the law?

_____

**IT IS ORDERED** that the Defendant's Motion for Certain Supplemental Jury Selection Procedures and the Defendant's Motion for Supplemental Jury Questionnaire are granted in part and denied in part. The Court will conduct the individual voir dire in groups of seven. The Court will seat the jurors in groups of seven in the en mass voir dire, and when the Court excuses the entire group, the Court will seat the smaller groups on the front row of the jury box. The Court will then bring individual jurors to the bench for individual questioning by the Court and by the parties.

Proposed Question 20 will not be included in the Supplemental Jury Questionnaire and will be replaced with the following question:

> 20. You may hear evidence that Mr. Sandoval actively participates in the spiritual ceremonies and rituals of the traditional Native religion of San Felipe Pueblo. Do you have any idea, notion, belief, attitude, or opinion, based on religion, background, ideology, or otherwise, that would prevent you from being fair and impartial in a case involving a defendant who practices Native American religions?
>
> Yes _____ No _____
>
> If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as the Court will give it to you in its instructions, disregarding any other ideas, notions, or beliefs that you may have?
>
> Yes _____ No _____
>
> Does any reason or problem suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the Court's instructions to you on the law?
>
> _____

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
    for the District of New Mexico

Samuel L. Winder
  *Assistant United States Attorney*
    for the District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Charles N. Fisher
Allison & Fisher
Albuquerque, New Mexico

    *Attorneys for the Defendant*