# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                            No. CR 04-2362 JB

JAMES SANDOVAL,

       Defendant.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on: (i) the Psychological Report dated February 28, 2006 regarding Defendant James Sandoval prepared by Dr. Roll (Exhibit 3 to the March 3, 2006 hearing); and (ii) the United States' Brief in Response to the Proposed Testimony of Defendant's Expert Witness Dr. Samuel Roll Filed on March 3, 2006, filed March 3, 2006 (Doc. 102). The Court held an evidentiary Daubert hearing on Dr. Roll's proposed testimony on March 1, 2006. The primary issue is whether Dr. Roll's proposed expert testimony would assist the jury in gathering information and making decisions about Sandoval, and whether his proposed testimony is reliable. The Court believes that a portion of Dr. Roll's testimony: (i) will assist the jury in its fact-finding role; and (ii) is reliable. The Court will allow Dr. Roll's testimony in part at the trial.

The Court will allow Dr. Roll to testify that: (i) Sandoval does not have an impulse disorder, a manic disorder, nor a tendency to mania; (ii) Sandoval does not exhibit an anti-social personality disorder; (iii) Sandoval's testing did not show the presence of schizophrenia, schizoaffective disorder, or other psychosis or psychotic-like conditions; (iv) Sandoval does not have characteristics associated with "unconscious, regressed or fixated impulsive tendencies"; (v) Sandoval shows no "absence of

boundary definitions"; (vi) Sandoval demonstrates good abilities to form accurate impressions of himself, to interpret the actions and intentions of others without distortion, to anticipate adequately the consequences of his own actions, and to construe correctly what constitutes appropriate behavior in various kinds of situations; (vii) Sandoval can differentiate between fantasy and reality; (viii) Sandoval has an "adaptive capacity to think logically and coherently," and is capable of "coming to reasonable conclusions about relationships between events and understanding consequences of his actions"; and (ix) Sandoval has the adaptive capacity to anticipate and establish close, intimate, and mutually supportive relationships with other persons. Psychological Report ¶¶ 1-6, at 1-3.

The Court believes that Dr. Roll has sufficiently established that the above opinions are based on his specialized knowledge, that they will help the trier of fact, and that they are reliable and relevant. The Court also believes that the probative value of the above opinions is not substantially outweighed by the danger of unfair prejudice, misleading the jury, confusion of the issues, or undue delay.

The Court will not, however, allow Dr. Roll to testify: (i) that the above characteristics or lack thereof are linked to propensity or predisposition to act out sexually or aggressively towards another person -- the Court does not believe that Dr. Roll sufficiently established the reliability of these ultimate conclusions; (ii) that Sandoval's strengths would make it difficult for him to disregard the rights of a child through sexual abuse -- the Court does not believe that Dr. Roll sufficiently established the reliability of these ultimate conclusions; and (iii) concerning Sandoval's character difficulties that "require intensive psychotherapy" -- the Court does not see how this proposed testimony is relevant, and believes that it may confuse or mislead the jury, and result in undue delay. Id. at 1-3.

**PROCEDURAL BACKGROUND**

Sandoval provided the Court with Dr. Roll's curriculum vitae and his three-page psychological review. The Court reviewed these documents and subsequently held a hearing on the motion.

At the hearing, counsel for both parties agreed that Dr. Roll is qualified in the fields of both criminal and forensic psychology. See Transcript of Hearing at 14:12-16 (taken March 1, 2006). The United States does not dispute Dr. Roll's credentials. The Court heard Dr. Roll testify about his proposed expert opinions and heard argument from counsel about the admissibility of the proposed testimony.

The Court's review of Dr. Roll's psychological report does not indicate that he will be called as an expert to testify about insanity, mental disease or defect, or a mental condition that will bear on the issue of guilt. Rather, Sandoval intends to call Dr. Roll to give his expert testimony on three issues related to his findings during his evaluation and testing of Sandoval: (i) Dr. Roll proposes to testify that there is no indication in any of the psychological evidence that shows the presence of a psychological disorder that would predispose Sandoval to a sexual acting out; (ii) Dr. Roll intends to testify that Sandoval has strengths that would make it difficult to disregard the rights of a child through sexual abuse; and (iii) Dr. Roll intends to testify that Sandoval has some difficulties that, when "combined with a confluence of circumstances, may help understand his unusual behavior." Psychological Report ¶¶ 1-6, at 1-3.

In his report, Dr. Roll stated: "There is no way a psychological evaluation can determine the correct version of a previous course of events, disentangle varying accounts of complex, interpersonal interactions, or determine guilt or responsibility." Id. at 1. He also stated: "The purpose of the

evaluation is to provide a picture of Mr. Sandoval' [sic] personality . . . ." Id. At the hearing held on this motion, Dr. Roll confirmed the limits of his testimony.

Dr. Roll's report concludes the following:

1. There is no indication in any of the psychological evidence that indicate the presence of a psychological disorder that would predispose Mr. Sandoval to a pattern of sexual acting out or aggression against others. He does not have an impulse disorder. He has neither a manic disorder nor a tendency to mania.

2. Mr. Sandoval's psychological testing also indicates the absence of an anti-social personality or other character disorder that would be predictive of a repetitive pattern of disregard of the rights and needs of others, especially very young children.

3. Mr. Sandoval's test data argue against the presence of schizophrenia, schizoaffective disorder, or any other psychosis or psychotic-like condition which would predispose him to act out against others as part of a loss of reality testing, confusion between fantasy and reality testing, hallucinations or delusions.

4. Mr. Sandoval shows none of the characteristics associated with unconscious, regressed or fixated impulsive tendencies.

5. Many persons who are involved in sexual crimes, especially sexual crimes against children, have a merger, or lack of sufficient differentiation between self and non-self or lack of generational definition. Mr. Sandoval shows no such absence of boundary definitions.

6. In addition to the absence of any character disorder, impulse disorder, psychotic like states, or a manic disorder, Mr. Sandoval has definite strengths. It is important to underscore that these strengths are those that would make it difficult for someone to disregard the rights of a child through sexual abuse.

    A. Mr. Sandoval demonstrates good abilities to form accurate impressions of himself, to interpret the actions and intentions of others without distortion, to anticipate adequately the consequences of his own actions, and to construe correctly what constitutes appropriate behavior in various kinds of situations.

    B. His reality testing capacities are intact which means that he can differentiate fantasy from reality. This is substantial personality

        strength.

    C.    Mr. Sandoval has an adaptive capacity to think logically and coherently. He is as capable as most persons his age of coming to reasonable conclusions about relationships between events and understanding consequences of his actions.

    D.    Mr. Sandoval has the adaptive capacity to anticipate and establish close, intimate, and mutually supportive relationships with other persons. He is likely, for the most part, to engage in adaptive interpersonal behaviors.

While Mr. Sandoval does not have a character or impulse disorder, he has some difficulties. These difficulties, when combined with a confluence of circumstances, may help understand his unusual behavior. These factors, which require intensive psychotherapy, include:

    A.    Mr. Sandoval shows evidence of situational stress that is making more demands on his adaptive capacities than he is ordinarily required to confront. This may reduce his usual high level of effectiveness in making decisions.

    B.    Mr. Sandoval employs an exaggeratedly ideational approach to making decisions and solving problems and is guided by what he is thinking rather than what he feels. This exaggerated reliance on ideational approaches to problem solving will sometimes occur at the expense of optimal use of the information he obtains from emotional reactions.

    C.    Mr. Sandoval is disturbed by worrisome thoughts, intrusive ideation, guilt, and anxieties that are the result of his actual, problematic life circumstances. Mr. Sandoval needs ongoing assistance in putting his behavior and it [sic] consequences into a perspective that will allow him to work through his reactions while using circumstances to help him forge guidelines for avoiding future difficulty.

In sum, Mr Sandoval does not have any of the characteristics associated with a pattern of inappropriate aggressive, sexual behavior, or antisocial behavior. He has positive attributes that serve as a preventive against a pattern of anti-social activity. He currently suffers from stress-related psychological difficulties.

Psychological Report of James Sandoval at 1-3.

## **THE COURT'S GATE-KEEPING ROLE**

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Daubert line of decisions requires the Court to determine whether Dr. Roll is proposing to testify to (i) scientific or other specialized knowledge that (ii) will assist the trier of fact to understand or determine a fact in issue. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). This determination entails a preliminary assessment whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. See id. at 592-593.

Before allowing Dr. Roll to testify, the Court must be satisfied that his testimony is not only relevant, but reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Id. at 149 (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 592). To be reliable under Daubert, an expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science," based on actual knowledge, not "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 590. The proponent of the evidence must also show that the expert's opinion is sufficiently tied to the facts of

the case to satisfy rule 702's relevancy requirements.  See Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999).

Recently, the United States Court of Appeals for the Tenth Circuit applied the Daubert and Kumho tests in Dodge v. Cotter Corp., 328 F.3d 1212 (10th Cir. 2003), reiterating the four basic tests for the reliability and admissibility of expert opinion testimony as follows: (i) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (ii) whether the opinion has been subjected to peer review; (iii) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (iv) whether the theory has been accepted in the scientific community.  See id. at 1222 (quoting Daubert, 509 U.S. at 593-94).  This list is not intended to be an exclusive checklist.  See Kumho Tire Co. v. Carmichael, 526 U.S. at 150.  To the contrary, district courts applying Daubert have broad discretion "in both deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability."  United States v. Velarde, 214 F.3d 1204, 1208-1209 (10th Cir. 2000)(citations omitted).

The Tenth Circuit, in Dodge v. Cotter, stated that the district court should generally focus on an expert's methodology rather than the conclusions it generates, but noted that an expert's conclusions are not immune from scrutiny.  See Dodge v. Cotter, 328 F.3d at 1222.  The Dodge v. Cotter opinion quotes with approval language from General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997), to the effect that a court may conclude that there is simply too great an analytical gap between the data and opinion proffered, and that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."  Dodge v. Cotter, 328 F.3d at 1222 (quoting General Elec. Co. v.

Joiner, 522 U.S. at 146).

> Under Daubert, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology. It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Id. at 1222-1223 (citations and internal quotations omitted).

## CHARACTER EVIDENCE AND RULE 404(a) AND 405

Rule 404 provides in relevant part:

(a) Character evidence generally. – Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of accused. – Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . . .

Rule 405 establishes the methods of proving character: "(a) Reputation or opinion. In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

The advisory committee notes to rule 405 provide in relevant part:

> Traditionally character has been regarded primarily in moral overtones of good and bad: chaste, peaceable, truthful, honest. Nevertheless, on occasion nonmoral considerations crop up, as in the case of the incompetent driver, and this seems bound to happen increasingly. If character is defined as the kind of person one is, then account must be taken of varying ways of arriving at the estimate. These may range from the opinion of the employer who has found the man honest to the opinion of the psychiatrist based upon examination and testing. No effective dividing line exists between character and mental capacity, and the latter traditionally has been provable

by opinion.

## **ANALYSIS**

To lay a proper foundation for Dr. Roll's testimony, Sandoval must demonstrate to the Court that the expert's testimony is both relevant and reliable.  Because the Court finds that a portion of the proposed testimony meets the reliability requirement, the Court will permit Dr. Roll to testify at the trial under rule 702.  The Court, however, also finds that a portion of Dr. Roll's testimony has not been shown to be sufficiently reliable, and the Court will exclude that portion.

### 1.    **Reliability of the Test Results.**

Sandoval sufficiently proved the reliability of the test results themselves, but did not sufficiently show the reliability of the ultimate conclusions that he reached from those test results. Dr. Roll testified concerning the reliability of the tests that he performed.  He testified that the Rorschach and the MMPI are generally accepted in the psychological and psychiatric community as reliable and valid tests, that they are the standard tests given, that he uses these tests to diagnose patients, and that he administers approximately 60 such tests annually.  See Transcript of Hearing at 32:15-19; 20:3-21:10; 24:9-22.  He testified that the testing he performed has been subjected to peer review.  See id. at 23:1-24:25, 28:18-20, 37:8-14.  He also testified that he followed all of the standard procedures and protocols in performing the Rorschach and the MMPI.  See id. at 32:10-14. Dr. Roll always has a colleague verify that the tests are scored correctly for court-related matters. See id. at 23:17-20.

The Court believes that Dr. Roll has shown that the initial results in his testing are reliable -- whether Sandoval had a "psychological disorder," "anti-social personality or other character disorder," "any [] psychosis or psychotic-like condition," "characteristics associated with

unconscious, regressed or fixated impulsive tendencies," "boundary definitions," and "strengths." Psychological Report at 1-3. Dr. Roll sufficiently showed the reliability of the underlying tests, and the connection of such tests to Sandoval's characteristics or lack thereof. The Court does not believe, however, that Dr. Roll sufficiently showed that his ultimate conclusions to Sandoval's lack of character deficiencies -- propensity, predisposition, inconsistency, or difficulty in acting out -- are reliable. In reviewing the transcript of the hearing, the Court does not believe that there is sufficient evidence concerning reliability, peer review, or community acceptance as to how Sandoval's characteristics or lack thereof are connected to predisposition, and propensity or lack thereof as well as difficulty in acting out. See Dodge v. Cotter, 328 F.3d at 1222 ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

Because Sandoval has sufficiently shown the reliability of Dr. Roll's test results of Sandoval's characteristics, but did not sufficiently connect such to propensity, predisposition, inconsistency, or difficulty in acting out, the Court will allow Dr. Roll to testify concerning Sandoval's characteristics, if such testimony will assist the jury, but will not allow Dr. Roll to connect those characteristics with propensity, predisposition, inconsistency, or difficulty in acting out.

### 2. **Assist the Jury in its Fact-Finding Role.**

Sandoval has convinced the Court that a portion of Dr. Roll's testimony will assist the jury to gather information and make decisions about Sandoval. Whether a defendant has psychological disorders is not normally something that a juror can tell from looking at or observing a defendant. See Transcript of Hearing at 51:21-53:8. Because Dr. Roll's testimony will help the jury gather information about whether Sandoval has certain characteristics that the jury would not otherwise be

able to determine, the Court will allow Dr. Roll to testify concerning Sandoval's characteristics.[1]

### 3. **Rule 403.**

Even if the Court found that Dr. Roll had sufficiently connected Sandoval's characteristics to his propensity, predisposition, inconsistency, or difficulty in acting out, and thus showed that the ultimate conclusions were reliable, the Court would still preclude the evidence under rule 403; the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighs its probative value. Dr. Roll testified that his proposed testimony on propensity and predisposition would not show whether Sandoval "probably did it or not." Id. at 93:7-17. Because the proposed testimony does not indicate if Sandoval "probably did it or not," the probative value of the proposed testimony is not high, as it does not appear that such testimony will show whether it is more likely than not that Sandoval either committed or did not commit this crime. In light of the proposed testimony's probative value, it is substantially outweighed by the danger that a battle of the experts will ensue, and the danger of misleading the jury and confusing the issues; there is a danger that the trial will become more about whether Sandoval's personality is inconsistent with the personality of someone who would commit this crime instead of whether Sandoval committed the crime, even though the proposed testimony itself does not indicate whether Sandoval probably did or probably did not commit the crime. It also may mislead the jury to conclude that Sandoval either "probably"

---

[1] Finally, the Court also notes that the proposed testimony concerning Sandoval's characteristics i.e., that he does not have a psychological disorder, may be admissible under rules 404(a) and 405 of the Federal Rules of Evidence. Rule 404(a) provides that the defendant can offer evidence of the accused's character to show action in conformity therewith, and rule 405 provides that such character evidence may be presented in the form of opinion testimony. The advisory committee notes to rule 405 provide that the manner in which character is shown "may range from the opinion of the employer who has found the man honest to the opinion of the psychiatrist based upon examination and testing." Here, Dr. Roll has evaluated Sandoval and proposes to testify as to Sandoval's characteristics, and it does not appear that rules 404(a) and 405 preclude this testimony.

did or did not commit the crime based solely on Dr. Roll's testimony that Sandoval's personality is inconsistent with someone who would commit this crime, whereas Dr. Roll concedes that this evidence does not lead to that conclusion, because Dr. Roll would have needed to "look at a lot of data, which [he] did not." There is thus a real danger that the jury will use the evidence in a manner in which it was not intended.

### 4.     United States v. Sanchez.

The Court's decision is not inconsistent with its decision and rationale found in United States v. Sanchez, Memorandum Opinion and Order, ("Sanchez Opinion") filed October 7, 2003 (Doc. 101). In United States v. Sanchez, the Court precluded Dr. Roll from testifying that the defendant's personality features were consistent with giving a false confession in the effort to help a loved one, and that defendant's personality features were inconsistent with the crimes with which he was charged. The Court ruled that the proposed testimony was not material or relevant, that its probative value was substantially outweighed by the danger of unfair prejudice, unnecessary confusion of the issues, and misleading the jury, and that the defendant had not sufficiently shown that the proposed testimony was reliable. See Sanchez Opinion at 6-11. The Court finds the same here as to the proposed testimony. Dr. Roll has not sufficiently shown that his ultimate conclusions concerning propensity, predisposition, inconsistency, and difficulty in acting out are reliable. The Court also believes, as discussed earlier, that the probative value of such ultimate conclusions is substantially outweighed by the danger of confusion of the issues and misleading the jury. The Court also believes, however, that the results underlying those ultimate conclusions, i.e., no sign of schizophrenia, are relevant, reliable, and do not present the same dangers of confusion and misleading the jury.

**5.     Sandoval's Difficulties.**

The Court does not believe that Sandoval has shown the relevance of Dr. Roll's proposed testimony concerning Sandoval's difficulties. The evidence does not appear to the Court to have any probative value concerning the issues in the case. Because it does not appear that the evidence has any probative value, and that it may lead to confusion, or it may mislead the jury, or result in undue delay, the Court will exclude such testimony.[2]

**IT IS ORDERED** that Sandoval is allowed to introduce his proposed testimony in part. The Court will allow Dr. Roll to testify concerning Sandoval's character strengths and lack of character deficiencies. The Court will not allow Dr. Roll to connect propensity or predisposition to Sandoval's lack of character deficiencies, and will not allow Dr. Roll to connect Sandoval's strengths to a difficulty in disregarding the rights of children. The Court also will not allow Dr. Roll to testify concerning Sandoval's "difficulties."[3]

---

[2] The United States argues that it does not know what the underlying purpose of the psychiatric analysis was because the order was obtained *ex parte*. See Bench Brief in Response to Defendant's Reply to Government's Brief to Exclude Expert Testimony Concerning Defendant's Character at 8-11, filed April 13, 2006 (Doc. 112). It appears that the United States is contending that it is unsure whether it can attack Dr. Roll's testimony on the basis of the purpose behind the evaluation because it does not know and has no way of knowing what the purpose behind the evaluation was. The Court believes that, in light of its ruling, it does not need to decide this issue. If the United States still needs this information, however, it can again bring this issue to the Court's attention after attempting to resolve it with opposing counsel. Sandoval may now want to produce the ex parte order, in redacted or unredacted form.

[3] The Court entered an Order granting the motion in part and denying it in part on June 2, 2006 (Doc. 115). In footnote 2 of that Order, the Court represented it would issue a memorandum opinion explaining the reason for its decision to grant in part and deny in part the Plaintiff's motion. This opinion more fully explains the Court's reasoning for its decision

                                        _____
                                        UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the District of
    New Mexico
Samuel L. Winder
Fred Smith
  Assistant United States Attorneys for the District of
    New Mexico
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Charles Fisher
Allison & Fisher
Albuquerque, New Mexico

      *Attorneys for the Defendant*